Joshua W. Carden, SBN 021698
JOSHUA CARDEN LAW FIRM, P.C.
16427 North Scottsdale Road, Suite 410
Scottsdale, AZ 85254
joshua@cardenlawfirm.com
(480) 454-1100
(480) 454-1101 (Fax)
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stacey Reinert,<br><br>            Plaintiff,<br><br>v.<br><br>Mutual of Omaha Bank, a Nebraska corporation, CIT Bank, N.A., a national banking association<br><br>            Defendants. | **ORIGINAL COMPLAINT<br>(JURY TRIAL REQUESTED)** |

Plaintiff Stacey Reinert, by and through the undersigned counsel, hereby seeks relief under Title VII, 42 U.S.C. § 20003 as follows:

### PARTIES

1. Plaintiff Stacey Reinert was at all relevant times herein a resident of Maricopa County, Arizona, and an "employee" of Mutual of Omaha Bank for purposes of Title VII.

2. Defendant Mutual of Omaha Bank ("MOB") is a Nebraska corporation at all relevant times conducting its business in Maricopa County, Arizona.

3. Defendant CIT Bank, N.A. ("CIT") is a national banking association at all relevant times conducting its business in Maricopa County, Arizona.

4. Upon information and belief, following the events described herein, MOB merged with CIT, and therefore CIT is the successor in interest to MOB and may be held jointly and severally liable to the same degree as MOB for the unlawful actions described herein.

5. Alternatively, both Defendants are managed together, held out to the public as a combined unit, and in all other respects constitute a "joint enterprise" or "joint employer" for



purposes of the various causes of action listed herein.

6. All Defendants were thus an "employer" of Plaintiff within the meaning and purposes of Title VII, at all times material to this action.

7. At all times pertinent to this Complaint, Defendants' managerial employees were acting within the course and scope of their employment; and as a result thereof, Defendants responsible and liability is imputed for the acts and omissions of Defendants' managerial employees, as alleged herein, under the principles of *respondeat superior*, agency, and/or other applicable law.

8. All acts alleged in this Complaint occurred in Maricopa County, Arizona.

## JURISDICTION AND VENUE

9. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 & 1343.

10. The unlawful employment practices described herein were committed within the State of Arizona, on Defendants' premises located in Maricopa County, State of Arizona.

11. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

## ALLEGATIONS COMMON TO ALL CLAIMS

12. MOB was the banking arm of Mutual of Omaha, a nationwide provider of insurance and financial products.

13. MOB provides personal banking, commercial banking, wealth management, community association banking and mortgage lending services through full service community bank locations and loan production offices in ten states.

14. MOB employed approximately 800 employees throughout the country.

15. MOB employed Ms. Reinert beginning October 18, 2017, as Senior Vice President Commercial Relationship Banker.

16. She reported to Kevin Halloran, MOB's Market President.

17. Ms. Reinert is a highly experienced banker, who MOB hired to help develop their healthcare lending lines.

18. From nearly the beginning of her employment, Ms. Reinert experienced a variety of sexist and misogynist conduct and comments from Halloran.



19. Ms. Reinert was one of only two women on the team of approximately 10 bankers and underwriters supervised by Halloran.

20. Halloran repeatedly made comments about Ms. Reinert's "inability" to do her job, or to work 40 hours a week, because she was a "single mother."

21. Halloran refused to let Ms. Reinert work from home on occasion, though he permitted Ms. Reinert's male counterparts to do so.

22. Halloran even called and accused a female MOB employee not under his direct supervision of "taking naps" while working from home, with no proof whatsoever.

23. Halloran's conduct was not limited to sexist comments.

24. Halloran frequently forwarded lending leads to Mr. Reinert's male co-workers to assist them in making their lending goals.

25. Halloran did not do this for Ms. Reinert, except on one occasion.

26. That one occasion was a self-evidently bad loan application to MOB, but it was a company called the "Sex Doctors."

27. Upon information and belief, Halloran only referred this so-called "opportunity" to Ms. Reinert because of the name, and the embarrassment it would cause.

28. Halloran would frequently work together with Ms. Reinert's male co-workers in meeting with loan applicants and clients to help close their deals.

29. When Ms. Reinert would set up similar opportunities, Halloran would avoid them or promise to attend and change his mind at the last moment.

30. All potential deals that bankers would find would go through MOB's underwriting department.

31. Halloran had ultimate approval authority over the finalization of deals.

32. Ms. Reinert submitted millions of dollars of potential deals to the underwriting process.

33. These were quality deals that MOB reasonably should have wanted to approve.

34. Yet Halloran routinely denied them and nit-picked them in ways not done to the deals submitted by Ms. Reinert's male co-workers.



35. It got so bad that one of the underwriters semi-joked to Ms. Reinert that he wished there was a way they could insert someone else's name on Ms. Reinert's deals and then, when Halloran inevitably approved the highly-qualified deals, put Ms. Reinert's name back on them.

36. Ms. Reinert reported Halloran's conduct first to Tim Sullivan, MOB's Executive Vice President and Chief Lending Officer in June 14, 2019.

37. Ms. Reinert made additional reports to Roseann Neumeyer, MOB's Managing Director of Bank Talent (a human resources function) with more specifics on June 19 & 20, 2019.

38. Ms. Reinert also listed witnesses for Ms. Neumeyer to interview.

39. Upon information and belief, Ms. Neumeyer conducted no reasonable investigation into Ms. Reinert's allegations and failed to inquire about Halloran's conduct towards women.

40. Before any alleged investigation by Ms. Neumeyer was even completed, MOB terminated Ms. Reinert on June 21, 2019.

41. Upon information and belief, Halloran was the guiding force behind Ms. Reinert's termination and ultimately caused it.

42. Upon information and belief, Ms. Reinert was terminated because of her sex and in retaliation for her reports to management and human resources about Halloran's conduct.

43. Ms. Reinert dual-filed a charge of discrimination on September 12, 2019. A true and correct copy of that charge is attached hereto as Exhibit A.

44. The Arizona Attorney General Civil Rights Division investigated the charge, which included sex discrimination and retaliation allegations.

45. On September 11, 2020, the EEOC mailed a notice of suit rights to Ms. Reinert. A true and correct copy of that notice is attached hereto as Exhibit B.

46. Ms. Reinert has filed this lawsuit within 90 days of receiving her notice of suit rights from the EEOC.

47. All conditions precedent to the filing of this lawsuit have occurred or been satisfied.

**FIRST CAUSE OF ACTION – TITLE VII DISCRIMINATION**

48. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

49. Plaintiff is a member of a protected class: female.



50. As described above, Plaintiff was subject to unlawful discrimination in violation of Title VII in that she was subjected to different terms and conditions, made the object of sexist comments, and generally held to a different standard than her male co-workers by her supervisor – disparate treatment because of her sex.

51. As a direct and proximate result of Defendants' conduct, Plaintiff has lost wages and benefits from her employment, both past and future.

52. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained damages in the form of emotional distress, embarrassment, humiliation, loss of reputation, and loss of self-esteem.

53. Defendants' conduct was malicious, done with reckless indifference, and/or performed with an evil mind so as to entitle Plaintiff to punitive or exemplary damages.

## SECOND CAUSE OF ACTION – TITLE VII RETALIATION

54. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

55. Plaintiff engaged in protected activity by reporting Halloran's conduct to management and human resources.

56. Defendants retaliated against Plaintiff for engaging in protected activity by terminating her as described herein in violation of Title VII.

57. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliatory practices unless and until this Court grants relief.

58. As a direct and proximate result of Defendants' conduct, Plaintiff has lost wages and benefits from her employment, both past and future.

59. As a direct and proximate result of Defendant's conduct, Plaintiff has sustained damages in the form of emotional distress, embarrassment, humiliation, loss of reputation, and loss of self-esteem.

60. Defendant's conduct was malicious, done with reckless indifference, and/or performed with an evil mind so as to entitle Plaintiff to punitive or exemplary damages.

## JURY TRIAL DEMANDED

61. Plaintiff demands a trial by jury.



**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

A. Declaring that the acts and practices complained of herein are in violation of federal law;

B. Directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment or employment opportunities – including posting notices and requiring training of all relevant management officials;

C. Directing Defendant to place Plaintiff in the position she would have occupied but for Defendant's unlawful actions, and make her whole for all earnings she would have received but for Defendant's discriminatory treatment, including, but not limited to, back pay, front pay, pension, and other lost benefits;

D. Awarding Plaintiff compensatory and punitive damages in an amount to be determined by the jury;

E. Awarding Plaintiff further equitable relief as deemed appropriate by the Court to redress the violations of the employment statutes implicated herein;

F. Awarding Plaintiff pre- and post-judgment interest, the costs of this action, and reasonable attorneys' fees as provided by the statutes providing the causes of action cited herein; and

G. Granting such other and further relief as this Court deems necessary and proper.

Respectfully submitted on this 9th day of December, 2020,

JOSHUA CARDEN LAW FIRM, P.C.

By: s/Joshua W. Carden
Joshua W. Carden
*Attorneys for Plaintiff*
*Stacey Reinert*
